UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANDRE RAMON CRAVER,<br><br>    Plaintiff,<br><br>    v.<br><br>T. TRAN,<br><br>    Defendant. | No. 2:20-cv-01714 WBS DB P<br><br>FINDINGS AND RECOMMENDATIONS |

Plaintiff, a state prisoner proceeding pro se, filed this civil rights action seeking relief under 42 U.S.C. § 1983. Defendant's motion for summary judgment is before the court. (ECF No. 43.) For the reasons set forth, the undersigned recommends the motion be granted in part and denied in part.

**I.  PROCEDURAL BACKGROUND**

Plaintiff proceeds against defendant T. Tran on a retaliation claim under the First Amendment and a medical deliberate indifference claim under the Eighth Amendment. (See ECF No. 22.) Plaintiff alleges defendant denied him pain medication on March 8, 2020, and then falsely accused him of disrespecting staff in retaliation for plaintiff's statement of intent to file a grievance. (See generally ECF No. 14, First Amended Complaint.)

On July 22, 2022, defendant filed a motion for summary judgment. (ECF No. 43.) Plaintiff has opposed the motion and defendant filed a reply. (ECF Nos. 44, 45.)

## II. LEGAL STANDARD

Summary judgment is appropriate when the moving party shows there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In order to obtain summary judgment, "[t]he moving party initially bears the burden of proving the absence of a genuine issue of material fact." In re Oracle Corp. Sec. Litig., 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). The moving party may accomplish this by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admission, interrogatory answers, or other materials" or by showing that such materials "do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A), (B).

"Where the non-moving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case." Oracle Corp., 627 F.3d at 387 (citing Celotex, 477 U.S. at 325); see also Fed. R. Civ. P. 56(c)(1)(B). Summary judgment should be entered "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Fed. R. Civ. P. 56(c)(1); Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact "that might affect the outcome of the suit under the governing

law," Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," Anderson, 447 U.S. at 248.

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "'the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial.'" T.W. Elec. Serv., 809 F.2d at 630 (quoting First Nat'l Bank v. Cities Serv. Co., 391 U.S. 253, 288-89 (1968)). Thus, the "purpose of summary judgment is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Matsushita, 475 U.S. at 587 (citation and internal quotation marks omitted).

"In evaluating the evidence to determine whether there is a genuine issue of fact, [the court] draw[s] all inferences supported by the evidence in favor of the non-moving party." Walls v. Central Contra Costa Transit Auth., 653 F.3d 963, 966 (9th Cir. 2011) (citation omitted). It is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. Richards v. Nielsen Freight Lines, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586 (citations omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Id. at 587 (quoting First Nat'l Bank, 391 U.S. at 289).

**III. UNDISPUTD FACTS**

Plaintiff has multiple myeloma, a type of cancer. (ECF No. 14 at 5, FAC.) On November 6, 2019, Dr. Hla renewed plaintiff's prescription for 650 mg of acetaminophen/Tylenol to be taken "in the morning and in the evening as needed for pain for 360 days[.]" (ECF No. 43-1 at 11, Ex. C to Tran Decl.; ECF No. 43-2 at 2, Hla Decl., ¶ 5.)

Craver's prescription was written to be distributed twice daily, as PRN AM + PM. (ECF No. 43-1 at 2-3, Tran Decl. ¶¶ 9, 11; ECF No. 43-2 at 2, Hla Decl., ¶¶ 5, 6.) "PRN" means the

1  medication should be given as needed; the "AM" designation means the medication should be
2  distributed during the morning distribution time (from 6:00 to 8:00 a.m.) and "PM" means it
3  should be given during the evening medication pass (from 4:30 to 6:30 p.m.). (Id.)

4  There is also a noon medication pass, available between 11:00 a.m. and noon. (ECF No.
5  43-2 at 2, Hla Decl., ¶ 5.) Plaintiff's Tylenol prescription was not written to be distributed during
6  the noon medication pass. (Id.)

7  A "BID" notation on a prescription means the medication is to be distributed twice daily,
8  at 0700 and 1900 hours, "unless ordered differently by the physician." (ECF No. 45-1 at 2, 4;
9  Tran Decl., ¶ 4 & Ex. A.)

10 A prescription for acetaminophen/Tylenol is typically written on an "as-needed basis"
11 because it is a medication that should not be taken more than necessary or for long periods of
12 time because it can cause negative side effects such as damaging the liver. (Hla Decl., ¶ 8.) It is
13 not mandatory that a patient take each dose of Tylenol at each time allowed. (Id.)

14 Defendant Tran is a Psychiatric Technician (PT). (Tran Decl. ¶¶ 3, 4.) Tran does not have
15 a medical degree or license and cannot modify a doctor's prescription. (ECF No. 43-1 at 2, Tran
16 Decl., ¶¶ 3, 4; Hla Decl., ¶ 7.)

17 On March 8, 2020, at approximately 11:30 a.m., Craver approached the medical window
18 and asked for his PRN prescription pain medication of acetaminophen/Tylenol. (ECF No. 15 at 5,
19 FAC.) Tran did not issue plaintiff the medication. (Id.)

20 Tran issued plaintiff a Rules Violation Report ("RVR") stating plaintiff verbally abused
21 Tran at the medical window on March 8, 2020. (ECF No. 43-1 at 4, Tran Decl., ¶¶ 23, 24.)

22 Plaintiff received his 650 mg Tylenol during the evening medication pass at 4:40 p.m. on
23 March 8, 2020. (Tran Decl., ¶ 28.)

24 In Dr. Hla's opinion, missing a single dose of Tylenol for someone with plaintiff's
25 medical condition would not result in any injury or enhanced pain of a serious nature. (ECF No.
26 43-2 at 2, Hla Decl., ¶¶ 12, 14.)

27 ////
28 ////

## IV.  DISCUSSION

Tran seeks summary judgment on several grounds. Tran argues (1) her actions did not constitute deliberate indifference to Craver's serious medical need; (2) filing a Rules Violation Report did not amount to retaliation; (3) Tran is entitled to qualified immunity from suit; and (4) Craver cannot show an evil motive or intent or reckless and callous indifference to federally protected rights, so craver is not entitled to punitive damages. (ECF No. 43 at 6.)

### A.  EIGHTH AMENDMENT

#### 1.  Applicable Legal Standards

An Eighth Amendment claims lies for "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 106 (1976). Such a claim involves two distinct inquiries: "the seriousness of the prisoner's medical need and the nature of the defendant's response to that need." McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1991), overruled on other grounds by WMX Techs., Inc. v. Miller, 104 F.3d 1133 (9th Cir. 1997) (en banc).

A serious medical need exists if the failure to treat the condition could result in further significant injury or the unnecessary and wanton infliction of pain. Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006). To act with deliberate indifference, a prison official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. Farmer v. Brennan, 511 U.S. 825, 837 (1994). A defendant is liable if she knows the plaintiff faces "a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." Id. at 847. "It is enough that the official acted or failed to act despite his knowledge of a substantial risk of harm." Id. at 842.

Mere 'indifference,' 'negligence,' or 'medical malpractice' will not support this cause of action." Broughton v. Cutter Laboratories, 622 F.2d 458, 460 (9th Cir. 1980) (citing Estelle, 429 U.S. at 105-06). Even gross negligence is insufficient to establish deliberate indifference to serious medical needs. See Wood v. Housewright, 900 F.2d 1332, 1334 (9th Cir. 1990).

////

////

### 2. Analysis

Under plaintiff's evidence, plaintiff advised Tran he was in bad pain, but Tran did not give plaintiff the Tylenol, stating "I don't care about your pain, I'm doing noon meds, get away from my window!" (ECF No. 14 at 7.) Tran argues her actions in not dispensing the Tylenol did not constitute deliberate indifference to Craver's serious medical need because (1) Tran, as a psychiatric technician, does not have the authority to write or change prescriptions; (2) Trans's actions were consistent with the prescription from Craver's physician; (3) the missed Tylenol happened on one occasion only; (4) there is no evidence of deliberate/intentional indifference; and (5) there was no serious medical need. (ECF No. 43 at 6.)

In opposition to the motion, plaintiff attempts to show that Tran was required to administer the Tylenol on the instance in question because the prescription "was not specifically bound" to the hours of 6:00-8:00 a.m. and 4:30-6:30 p.m. (ECF No. 44 at 12-13.) Therefore, plaintiff argues, in denying the medication, Tran intentionally interfered with a physician's order. (Id. at 16.)

There is no genuine dispute of material fact for trial. Plaintiff attempts to offer an opinion on the appropriate interpretation of his medical records and, specifically, that a "BID" notation allowed the medication to be administered every eight hours such that if an evening dose was not administered, then a nurse was required to distribute the medicine anytime the next morning. (ECF No. 44 at 31.) However, there is no evidence to establish that plaintiff is qualified to offer testimony regarding the proper interpretation of his medical records. See Fed. R. Evid. 701.

Plaintiff also produces medication administration records dating from November 2019 through March 2020. (ECF No. 44 at 68-93.) Plaintiff argues the records reflect multiple occasions on which he was administered Tylenol on a PRN AM + PM prescription outside the hours of 6:00-8:00 a.m. and 4:30-6:30 p.m., including once when it was so dispensed by Tran. (Id. at 12-13.) Regardless of whether staff dispensed plaintiff's Tylenol prescription outside the hours specified for the morning medication pass and evening medication pass on days other than March 8, 2020, Tran's refusal to do so on the single instance in question did not constitute deliberate indifference.

It is undisputed the prescription was written to be distributed as "PRN AM + PM," meaning the medication should be given as needed during the morning distribution time (from 6:00 to 8:00 a.m.) and during the evening medication pass (from 4:30 to 6:30 p.m.). Plaintiff fails to rebut the evidence that the prescription was written to be dispensed "on an as-needed basis during the morning medication pass, …, and the evening medication pass, …, but not for the noon medication pass[.]" (E.g., ECF No. 43-2 at 2, Hla Decl., ¶ 5.)[1] It is also undisputed that Tran's challenged conduct on March 8, 2020, was consistent with Dr. Hla's written order of prescription.

In addition, mere delays in administering his pain medication do not constitute deliberate indifference. See Frost v. Agnos, 152 F.3d 1124, 1130 (9th Cir. 1998); Petrosyan v. Hedgpath, No. 1:09-CV-00593-AWI, 2011 WL 3568812, at *4 (E.D. Cal. Aug. 12, 2011) ("slight delays in administering pain medication, without more, do not constitute deliberate indifference"), report and recommendation adopted, 2012 WL 994752 (E.D. Cal. Mar. 23, 2012); Tufono v. Nwaizugbu, No. C 10-4777 RMW PR, 2011 WL 335556, at *1 (N.D. Cal. Jan. 31, 2011) (two incidents of apparent delay in receiving pain medication did not set forth a viable deliberate indifference claim). Eighth Amendment liability requires "more than ordinary lack of due care for the prisoner's interests or safety." Farmer, 511 U.S. at 835 (quoting Whitley v. Albers, 475 U.S. 312, 319 (1986)).

Plaintiff fails to put forth evidence from which a reasonable jury could find Tran was aware of facts from which the inference could be drawn that a substantial risk of serious harm existed to plaintiff if he did not receive Tylenol on the single instance in question. Farmer, 511 U.S. at 837; Frost, 152 F.3d at 1130; O'Loughlin v. Doe, 920 F.2d 614, 617 (9th Cir. 1990) (repeatedly failing to satisfy requests for aspirins and antacids to alleviate headaches, nausea and pain does not rise to level of unnecessary and wanton infliction of pain). Summary judgment should be entered in Tran's favor on the Eighth Amendment claim.

---

[1] Plaintiff's alternate arguments that Tran produced a "falsified" prescription and that the prescribing doctor's declaration is "false" (e.g., ECF No. 44 at 33 & 36), are unsupported and do not create a genuine dispute of material fact.

### B. FIRST AMENDMENT RETALIATION

#### 1. Applicable Legal Standards

It is well-established that prisoners retain a First Amendment right to file prison grievances, and that retaliation against prisoners for their exercise of this right is itself a constitutional violation. Brodheim v. Cry, 584 F.3d 1262, 1269 (9th Cir. 2009). A claim of retaliation under the First Amendment has five elements: "(1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005).

The issuance of a false RVR is an adverse action that would chill the First Amendment rights of a person of ordinary firmness. Hines v. Gomez, 108 F.3d 265, 169 (9th Cir. 1997). In the Ninth Circuit, an inmate's threat to file a grievance is protected conduct. See Entler v. Gregoire, 872 F.3d 1031, 1039-43 (9th Cir. 2017).

#### 2. Analysis

Tran argues, first, she did not write the RVR because Craver threatened to file a 602 Grievance, but rather, because she was required to do so in a situation where an inmate disrespected prison staff. (ECF No. 43 at 15.) Therefore, defendant argues, the claimed adverse action would have been taken whether or not Craver threatened to draft or file a 602 Grievance. (Id. at 15-16.)

Under plaintiff's sworn allegations, however, Tran's RVR contained "falsified information" and was issued shortly after plaintiff advised Tran he was going to file a grievance. (ECF 14 at 11.) In addition, under plaintiff's sworn statements made in opposition to the motion for summary judgment, plaintiff did not verbally abuse Tran. (ECF No. 44 at 39 ("Craver didn't verbally abuse Tran"), 55 (declaration under penalty of perjury).) The court does not weigh evidence or make credibility determinations at the summary judgment stage. See T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987). Thus, the court cannot determine at this stage that Tran was required to issue plaintiff an RVR.

8

     Tran argues, second, that issuing the RVR served a recognized penological interest and therefore she was justified in issuing it. (ECF No. 43 at 16.) Prisoners alleging retaliation claims must demonstrate the alleged retaliation did not advance legitimate penological interests, such as the preservation of institutional order, discipline, and security. Barnett v. Centoni, 31 F.3d 813, 316 (9th Cir. 1994). "The plaintiff bears the burden of pleading and proving the absence of legitimate correctional goals for the [retaliatory] conduct [at issue]." Pratt v. Rowland, 65 F.3d 802, 806 (9th Cir. 1995).

     Whether the RVR advanced legitimate penological interests depends on the resolution of disputed material facts. Plaintiff's evidence, if believed, suffices to show an adverse action, protected conduct, and a chill of his First Amendment rights. See Entler, 872 F.3d at 1039-43; Hines, 108 F.3d at 169. A reasonable factfinder believing plaintiff's evidence could find Tran issued the RVR for retaliatory ends.

     Finally, Tran asserts she is qualifiedly immune because "[n]o reasonable PT would have believed that writing a valid RVR against a verbally abusive inmate was a violation of clearly established rights." (ECF No. 43 at 19.) This argument, also based on Tran's version of the facts, should be rejected because Tran's version of the facts has been fairly disputed by plaintiff. For all these reasons, summary adjudication should be denied as to the Eighth Amendment claim.

**C. Punitive Damages**

     To recover punitive damages against an individual officer in a case brought under 42 U.S.C. § 1983, a plaintiff must show the officer's conduct is "motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." Smith v. Wade, 461 U.S. 30, 56 (1983). "The standard for punitive damages under § 1983 mirrors the standard for punitive damages under common law tort cases," which extends to "malicious, wanton, or oppressive acts or omissions." Dang v. Cross, 422 F.3d 800, 807 (9th Cir. 2005).

     Tran argues no evidence supports Craver's claim for punitive damages. (ECF No. 43 at 19-20.) As to the surviving First Amendment claim, Tran argues the evidence "shows that Tran was not acting in retaliation, and instead was merely following protocol when faced with verbal attacks from inmates." (Id. at 19.) And further, "there is no evidence showing evil motive, intent,

or recklessness." (Id. at 20.)

Tran's argument on punitive damages that she was "merely following protocol when faced with verbal attacks from [plaintiff]" requires the court to accept her version of the relevant events. Under Craver's version of the events, the court does not conclude as a matter of law that Tran acted without the mental state that could support an award of punitive damages. Tran does not meet the burden for summary adjudication on the matter of punitive damages.

## VI. CONCLUSION AND RECOMMENDATION

In accordance with the above, IT IS RECOMMENDED that Tran's motion for summary judgment (ECF No. 43) be granted in part, to the extent that judgment be entered in Tran's favor on the claim under the Eighth Amendment, and that the motion be denied in all other respects.

These findings and recommendations are submitted to the United States District Judge assigned to the case pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within thirty (30) days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections shall be filed and served within fourteen (14) days after service of the objections. Failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated:  January 11, 2023

DLB7
crav1714.msj

DEBORAH BARNES
UNITED STATES MAGISTRATE JUDGE